## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NATHANIEL PATTERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. CIV-09-1105-F |
| | ) | |
| JUSTIN JONES, DIRECTOR, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Petitioner, Nathaniel Patterson, appearing *pro se*, has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 [Doc. #1] challenging the constitutionality of his state court conviction. Respondent has filed a Response [Doc. #13], and Petitioner has filed a Reply [Doc. #18]. The matter is now at issue. For the reasons set forth below, it is recommended that the petition be denied.

## I.     Procedural History

Petitioner was convicted, after jury trial, of Trafficking in Illegal Drugs – Cocaine Base – in violation of Okla. Stat. tit. 63, § 2-415 (Count 1) and Possession of a Controlled Dangerous Substance – Marijuana – in violation of Okla. Stat. tit. 63, § 2-401 (Count 2), Case No. CF-2006-2076, District Court of Oklahoma County, State of Oklahoma. The jury recommended punishment of 30 years imprisonment on Count 1 and 4 years imprisonment on Count 2. The trial court sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to run concurrently.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA affirmed Petitioner's conviction. *See* Response, Exhibit 3, OCCA Summary Opinion. Petitioner then filed an application for post-conviction. The state district court denied Petitioner's application. *See* Response, Exhibit 4, Order Denying Application for Post-Conviction Relief. Petitioner attempted to appeal the denial of post-conviction relief to the OCCA but the OCCA declined to exercise jurisdiction and dismissed the attempted appeal as untimely filed. *See* Response, Exhibit 6, Order Declining Jurisdiction and Dismissing Attempted Post-Conviction Appeal.

## II. Factual Background

In March 2006, police obtained a search warrant for 2601 North Phillips, Oklahoma City, Oklahoma, an area known to police as a high drug-trafficking area. Police approached Apartment No. 2 at this address and knocked and announced their presence. Mr. Patterson answered the door and police immediately handcuffed him and conducted a search of his apartment. Police found marijuana, crack cocaine and other drug paraphernalia. The various rocks of crack cocaine recovered from the apartment had a total net weight of 15 grams. The marijuana recovered from the apartment had a total weight of approximately 1 pound.

## III. Grounds for Federal Habeas Corpus Relief

In this habeas action, Petitioner raises the following six grounds for relief: (1) Oklahoma's drug trafficking statute under which Petitioner was convicted, Okla. Stat. tit. 63, § 2-415, is unconstitutional; (2) the trial court erred by failing to instruct the jury that Petitioner was not eligible for good time credits; (3) prosecutorial misconduct deprived

Petitioner of a fundamentally fair trial; (4) Petitioner's sentence is excessive; (5) the cumulative effect of errors deprived Petitioner of a fundamentally fair trial; and (6) Petitioner was denied the Sixth Amendment right to the effective assistance of appellate counsel.

Petitioner raised Grounds One through Five on direct appeal of his conviction. Petitioner raised Ground Six in state post-conviction proceedings.

## IV.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standards of review apply to those grounds for relief raised by Petitioner that were adjudicated on the merits by the state courts. *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004). Under AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result – not its rationale – is 'legally or factually unreasonable'").

Whether the law is clearly established is a threshold inquiry. *See House v. Hatch*, 527 F.3d 1010, 1017-1018 (2008), *cert denied*, 129 S.Ct. 1345 (2009). The absence of clearly established federal law is dispositive of the § 2254(d)(1) analysis. *Id.* at 1017. Thus, only if the court determines the law is clearly established does it proceed to determine whether the

state court decision is either contrary to or an unreasonable application of that law. *Id.* at 1018.

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself. *Id.* at 406. A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between *clearly* erroneous and unreasonable to all reasonable jurists.'" *House*, 527 F.3d at 1019 (*quoting Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (*quoting Maynard*, 468 F.3d at 671)). As the Supreme Court recently emphasized, "AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 130 S.Ct.1855, 1866 ( 2010).

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1).

## V.    Analysis

### A.    Ground One – Equal Protection Challenge to Oklahoma's Drug Trafficking Statute, 63 Okla. Stat. § 2-415

In his first ground for relief, Petitioner challenges, on equal protection grounds, the constitutionality of Oklahoma's drug trafficking statute, Okla. Stat. tit. 63, §2-415.[1] Pursuant to § 2-415, trafficking in cocaine base (crack cocaine) requires possession of at least five grams or more, *see* § 2-415 (C)(7)(a), while trafficking in cocaine powder requires at least 28 grams, *see* § 2-415(C)(2)(1) -- or more than five times as much.[2] Petitioner contends more blacks than whites are convicted of trafficking in crack cocaine even though blacks and other racial minorities are less involved in crack use than whites. Petitioner contends,

---

[1]Although Petitioner challenged the statute as unconstitutional under both the United States Constitution and the Oklahoma Constitution, on federal habeas review the Court limits its analysis to whether § 2-415 is violative of the United States Constitution. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

[2]The punishment for trafficking in either form of cocaine is the same for first-time offenders. *See* Okla. Stat. tit. 63, § 2-415(D)(1).

therefore, that the drug trafficking statute has a disparate impact on minority citizens as well as those who are financially disadvantaged.

On direct appeal, the OCCA rejected Petitioner's claim stating: "Given that neither the Supreme Court nor this Court has held statutes that have sentence disparities for crack and powder cocaine convictions unconstitutional, Proposition One is denied." *See* OCCA Summary Opinion at 2.

## 1. No Clearly Established Federal Law Supports Petitioner's Equal Protection Challenge

Relying on 28 U.S.C. § 2254(d)(1) and the OCCA's determination, Respondent contends Petitioner's claim should be denied due to the lack of clearly established federal law. *See House*, 527 F.3d at 1018 ("The absence of clearly established federal law is dispositive under § 2254(d)(1)."). This Court agrees. As the OCCA correctly noted, there is no Supreme Court pronouncement of a violation of equal protection rights based on state law that treats cocaine base and cocaine powder differently in the context of a trafficking charge. *See Thaler v. Haynes*, 130 S.Ct. 1171, 1173 (2010) ("A legal principle is 'clearly established' . . . only when it is embodied in a holding of [the Supreme] Court.").[3] Because no clearly established federal law supports Petitioner's claim, § 2254(d)(1) forecloses any

---

[3]Moreover, the federal statutory counterpart that treats cocaine base and cocaine differently has withstood race-based equal protection challenges in cases brought before the federal circuit courts of appeal. *See, e.g., United States v. Thurmond*, 7 F.3d 947, (10th Cir. 1993) (rejecting equal protection challenge to 21 U.S.C. § 841(b)(1) and U.S.S.G. § 2D1.1 and collecting circuit cases upholding constitutionality of these statutory provisions). Under the federal provisions addressed in *Thurmond*, one gram of cocaine base is treated the same as one hundred grams of cocaine powder, *see id.*, 7 F.3d at 951, a much greater disparity than that contained in Oklahoma's statutory scheme.

equal protection challenge Petitioner brings to his trafficking conviction pursuant to Okla.

Stat. tit. 63, § 2-415.[4]

> ### 2. Petitioner's Factual Challenge to the OCCA's Determination of his Equal Protection Claim Lacks Evidentiary Support

Petitioner further contends both that the OCCA did not fully address the merits of his

equal protection claim and that the OCCA's determination of the claim is contrary to or an

unreasonable application of the facts in light of the evidence presented. *See* 28 U.S.C.

§ 2254(d)(2). To the extent Petitioner attempts to bring a factual challenge to the OCCA's

determination pursuant to 28 U.S.C. § 2254(d)(2), his claim fails.[5]

On direct appeal, Petitioner claimed statistical evidence demonstrated a disparate

impact under the federal trafficking laws, relying on statistics cited in a 1994 federal district

court case, *United States v. Clary*, 846 F. Supp. 768 (E.D. Mo. 1994), *overruled*, 34 F.3d 709

---

[4]Petitioner cites *Kimbrough v. United States*, 552 U.S. 85 (2007) in support of his claim that the OCCA's rejection of his equal protection challenge to Oklahoma's drug trafficking statute is contrary to or an unreasonable application of clearly established federal law. Petitioner's reliance on *Kimbrough*, however, is misplaced. In *Kimbrough*, the Supreme Court addressed a narrow issue involving a federal district judge's discretion to vary from the United States Sentencing Guidelines and held that a district court may, in its discretion, conclude that the crack/powder disparity in the Guidelines-as applied to a particular defendant-yields a sentence that is greater than necessary under the sentencing factors set forth in 18 U.S.C. § 3553(a). The Court did not address any equal protection challenge to 21 U.S.C. § 841, the federal statute criminalizing the manufacture and distribution of crack cocaine on grounds that a drug trafficker dealing in crack cocaine is subject to the same sentence as one dealing in 100 times more powder cocaine. *Kimbrough*, therefore, does not provide the requisite clearly established federal law as required by 28 U.S.C. § 2254(d)(1).

[5]The OCCA did not expressly address Petitioner's factual allegations in support of his equal protection challenge. But, for purposes of habeas review, this Court assumes the OCCA adjudicated both the legal and factual bases for Petitioner's equal protection challenge. *See Gipson, supra*, 376 F.3d at 1197.

(8th Cir. 1994).  *See* Response, Exhibit 1, Brief of Appellant at 6.   In *Clary*, the defendant

submitted statistical evidence for the time period 1988 through 1992 pertinent to convictions

in the United States District Court for the Eastern District of Missouri, the federal judicial

district where the defendant was charged, tried and convicted.  He also submitted national

statistics from drug cases for the year 1992.  Those statistics are only remotely pertinent to

the analysis of any disparate impact to Petitioner resulting from his conviction under

Oklahoma's drug trafficking statute more than a decade later. And, significantly, Petitioner

did not submit any statistical evidence specific to Oklahoma's trafficking statute.

Accordingly, without even engaging in a § 2254(d)(2) analysis, Petitioner's claim should be

rejected based on the lack of any relevant evidence in the state court record in support of his

claim.

But, even if the Court were to engage in a § 2254(d)(2) analysis, based on the

statistical evidence Petitioner relies upon, his claim also fails.  As Petitioner conceded in his

direct appeal, the federal courts have rejected similar statistics as support for a finding of

disparate impact.  *See, e.g, Thurmond*, 7 F.3d at 952.  In *Thurmond*, the Tenth Circuit found

the statistics "unpersuasive" based on the defendant's lack of evidence of "a racially

discriminatory purpose on the part of Congress or the Sentencing Commission."  *See id*.

Here, Petitioner similarly failed to support his statistics with evidence of discriminatory

intent by the Oklahoma legislature.  To the contrary, as one federal district court has noted,

"Section 2-415 of Title 63 recognizes the intent of the Oklahoma legislature 'that those who

possess [a drug in excess of a specified amount] deserve a stiff punishment.'" *Ezell v. Mullin*,

No. 03-CV-048, 2006 WL 2021507 at * 6 (N. D. Okla. July 17, 2006) (rejecting challenge to Okla. Stat. tit. 63, § 2-415 on equal protection grounds).[6] Under these circumstances, any factual challenge Petitioner brings to the OCCA's determination of his equal protection challenge is without merit as Petitioner has failed to demonstrate that the OCCA's rejection of his equal protection challenge to Okla. Stat. tit. 63, § 2-415 is tantamount to an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. *See also Hawkins v. Addison*, No. CIV-09-1070-M, 2010 WL 1687658 at * (W.D. Okla. March 31, 2010) (unpublished op.) (rejecting habeas petitioner's equal protection challenge to Okla. Stat. tit. 63, § 2-415, construed as factual challenge to the OCCA's determination of the issue, where no evidence in the state record demonstrated Oklahoma's trafficking statute had a disparate impact on minority or low income citizens).

In sum, Petitioner's equal protection habeas challenge to Oklahoma's drug trafficking statute, Okla. Stat tit. 63, § 2-415, should be denied. Petitioner has failed to demonstrate that clearly established federal law supports his claim. Moreover, no evidence in the state court record establishes either a racially disparate impact or discriminatory intent of the Oklahoma statute; therefore, a factual challenge to the OCCA's determination also fails. Petitioner has not shown entitlement to relief pursuant to either § 2254(d)(1) or § 2254(d)(2). Accordingly, Ground One of the Petition should be denied.

---

[6]On appeal, the Tenth Circuit denied the petitioner a certificate of appealability and dismissed his appeal finding the district court's resolution of the constitutional claim was not debatable or wrong. *See Ezell v. Mullin*, 201 Fed. Appx. 599 (10th Cir. Oct. 18, 2006) (unpublished op.).

## B.     __Ground Two – Instructional Error__

In Ground Two of the Petition, Petitioner claims the trial court erred in refusing to instruct the jury that a conviction for drug trafficking would render Petitioner ineligible to receive good time credits toward the reduction of his sentence. *See* Okla. Stat. tit. 63, § 2-415(D)(3) (2004). The OCCA rejected this claim on direct appeal:

> [T]his Court has held that it is improper and error for the trial court to instruct the jury as to the possible reduction of the sentence imposed by pardon and parole or deductions for good behavior. [citations omitted].
>
> The trial court's omission of jury instructions regarding Appellant's ineligibility for good time credits was valid and not a fundamental error. Proposition Two is denied.

*See* Response, Exhibit 3, OCCA Summary Opinion.

The Supreme Court has stated that, with respect to alleged errors in jury instructions, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 124 S.Ct. 1830, 1832 (2004). "Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the error had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense." *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir.1990). The petitioner who attacks a state conviction on the basis of the jury instructions "has a great burden." *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.1995).

Here, Petitioner has failed to demonstrate, as a matter of state law, that he was entitled to an instruction advising the jury that he would be ineligible for good time credits if he were convicted of trafficking. To the contrary, the record shows the OCCA properly applied its

own precedent in denying Petitioner's claims. *See* OCCA Summary Opinion at 2 *citing Kovash v. State*, 519 P.2d 517, 522 (Okla. Crim. App. 1974) (additional citations omitted). And, in a published decision decided after Petitioner's direct appeal, the OCCA reaffirmed this long-standing rule. *See Watts v. State*, 194 P.3d 133, 136-137 (Okla. Crim. App. 2008).[7]

Most significantly, the Supreme Court has held due process requires that a jury be informed, either in a jury instruction or in arguments by counsel, as to parole eligibility only in capital cases in which future dangerousness is an issue. *Simmons v. South Carolina*, 512 U.S. 154 (1994); *accord, Ramdass v. Angelone*, 530 U.S. 156, 167 (2000) ("The parole-ineligibility instruction is required only when, assuming the jury fixes the sentence at life, the defendant is ineligible for parole under state law."). On this basis, the Tenth

---

[7]The OCCA based its rationale on the fact that "an instruction on the defendant's ineligibility for some institutional earned credits to reduce his prison sentence would introduce highly speculative factors into jury sentencing decisions." *See id*. at 137. On this basis, the OCCA distinguished its decision in *Anderson v. State*, 130 P.3d 273 (Okla. Crim. App. 2006) in which the OCCA held that a jury instruction should be given on Oklahoma's 85 % Rule. The OCCA stated:

> Appellant sees this statutory denial of "good time credits" on a par with the "85% Rule" of 21 O.S. Supp.2003, § 13.1, warranting an extension of *Anderson v. State*, 2006 OK CR 6, 130 P.3d 273, and a corresponding instruction to the sentencing jury. . . . We find *Anderson* is distinguishable. While an instruction on the 85% Rule "does not require trial courts to speculate about possible future actions of the executive branch," *Anderson*, at ¶ 16, 130 P.3d at 279, an instruction on the defendant's ineligibility for some institutional earned credits to reduce his prison sentence would introduce highly speculative factors into jury sentencing decisions. *Anderson* held the 85% Rule "is a specific and readily understood concept of which the jury should be informed . . ." but rejected the notion that such a rule would "open a floodgate of parole information" to be imparted in sentencing instructions to juries. *Id*. at ¶ 25, 130 P.3d at 283, *quoting Mayes v. State*, 1994 OK CR 44, ¶ 136, 887 P.2d 1288, 1318. *Anderson* did not break with earlier case law recognizing that trial courts ordinarily should not instruct the jury "as to the possible reduction of the sentence imposed by pardon and parole or deductions for good behavior." *Kovash v. State*, 1974 OK CR 26, ¶ 12, 519 P.2d 517, 522. (emphasis added). We have twice rejected similar claims in unpublished decisions after *Anderson*, and now expressly do so.

*Watts*, 194 P.3d at 136-137.

Circuit has rejected challenges based on failure to instruct the jury about parole eligibility even where such an instruction is required by state law. *See Gardner v. Jones*, 315 Fed. Appx. 87, 91 (10th Cir. Feb. 27, 2009) (unpublished op.) (relying on Supreme Court precedent requiring that a jury be informed of parole eligibility only in capital cases and holding that trial court's failure to instruct on Oklahoma's 85% rule did not render habeas petitioner's trial fundamentally unfair); *Taylor v. Parker*, 276 Fed. Appx. 772, 775-776 (10th Cir. April 29, 2008) (unpublished op.) ("We are convinced that the refusal to instruct on the eighty-five percent Rule did not render Mr. Taylor's trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense.") (citation omitted). Further, as Respondent points out, at least one federal district court in the Tenth Circuit has rejected the identical claim raised by Petitioner. *See Penny v. Parker*, No. 06-CV-0358, 2009 WL 2901204 (Sept. 2, 2009) (unpublished op.).

Based on the foregoing, Petitioner fails to establish a violation of his federal due process rights arising out of the trial court's failure to instruct the jury about his inability to earn good time credits. Accordingly, Ground Two of the Petition should be denied.

## C. Ground Three – Prosecutorial Misconduct

In this third ground for relief, Petitioner claims incidents of prosecutorial misconduct, when considered cumulatively, deprived him of a fundamentally fair trial. As the United States Supreme Court has instructed, "the appropriate standard of review of such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (*quoting Donnelly*

*v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  In *Donnelly*, the Supreme Court noted that prosecutorial misconduct may serve as the basis for habeas relief only if the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See* 416 U.S. at 642-48.

Guided by *Donnelly*, in *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994), the Tenth Circuit has instructed courts presented with a claim that a prosecutor's statements resulted in the denial of due process to "look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution." 39 F.3d at 1474 (citation and quotation omitted). And more specifically, in *Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994), the Tenth Circuit noted that "[w]hile improper appeals to societal alarm and requests for vengeance for the community to set an example are unwarranted, they are also not the type of comments that the Supreme Court has suggested might amount to a due process violation." *Id.*, 41 F.3d at 1356 (citation and quotation omitted).

Here, the evidence of Petitioner's guilt was overwhelming.  Inside Petitioner's apartment, police found a plate with crack cocaine having a net weight of 15 grams and a value of $100 per gram.  *See* Record, Transcript of Trial Proceedings, April 9-10, 2007 (Tr.) at 61; *See also* Response, Exhibit 10, relevant transcript pages.  Also, police found a significant quantity of marijuana which, according to lab reports, weighed fairly close to a pound.  Tr. at 62, 63.  Police also found other drug paraphernalia indicating Petitioner was selling drugs including a cutting plate and digital scales.  Tr. 90-93.  No evidence linked

13

anyone other than Petitioner to the apartment.  Tr. at 96.  And, Petitioner stipulated to his prior conviction for trafficking.  Tr. at 134-135.

With these standards and the evidence of Petitioner's guilt in mind, the Court addresses each instance of prosecutorial misconduct singularly and then considers their cumulative effect.

### 1.     Reference to a Knife

Petitioner first contends that during opening statement, the prosecutor, without notice or a proper foundation, stated that Petitioner had a knife in his apartment as a "tool of his trade."  *See* Tr. at 22.[8]  Defense counsel immediately objected to the prosecutor's statement and then moved for a mistrial.  After hearing argument of counsel, the trial court instructed the prosecutor to leave out any reference to the knife during opening statements.  *See* Tr. at 23-36.  Further, the trial court, upon request of defense counsel, admonished the jury to disregard any statements about a knife.  Tr. at 37. The record shows no further mention of the knife was made.

---

[8]The prosecutor stated:

"[The defendant] had gathered the tools of his trade in his home. . . . He had drugs. He had approximately 15 grams of cocaine base, or crack cocaine.  He had close to a pound of marijuana in different packages in different places throughout his apartment.  He had digital scales that are used for measuring drugs in the drug distribution business.  He had a number of Baggies, plastic Baggies, sandwich-type Baggies that are used in the drug distribution business.  He had a knife.

Tr. at 22.

Petitioner has not established that he was denied a fundamentally fair trial as a result of the prosecutor's reference to the knife. As the OCCA found, addressing this claim on direct appeal of Petitioner's conviction, the trial court minimized any potential harm caused by the reference to the knife by sustaining defense counsel's objection and admonishing the jury. *See* OCCA Summary Opinion at 3. The OCCA's adjudication of this issue is not contrary to or an unreasonable application of clearly established federal law.

### 2. Use of Hypothetical Questions

Petitioner next contends the prosecutor engaged in misconduct when asking hypothetical and irrelevant questions about the necessity of the police forcing their way into a residence even though in his case, no force was used. The transcript shows that Jimmy Cortez, an Oklahoma City police officer, testified on behalf of the State. Officer Cortez described his "assignment" with respect to the search. He stated that he was responsible for protecting the "slam" -- a large metal ramming device sometimes used by police in executing a "knock and announce" warrant like the one obtained in Petitioner's case. Tr. at 48. Officer Cortez further testified that in this particular case he did not have to use the slam in executing the warrant. Tr. at 49. Defense counsel did not object to this testimony at trial.

The OCCA rejected Petitioner's claim of prosecutorial misconduct with respect to this testimony. The OCCA found: "the witness' testimony about the use of force to enter a residence was merely an explanation of a term the witness had used in earlier testimony." *See* OCCA Summary Opinion at 3. Petitioner fails to demonstrate that the prosecutor's questions to Officer Cortez constitute prosecutorial misconduct. Officer Cortez described

15

the events surrounding the execution of the search warrant and the role he played with respect thereto. There is no evidence the prosecutor was eliciting improper testimony. Petitioner has failed to demonstrate prosecutorial misconduct on the basis of the prosecutor's questions to Officer Cortez. The OCCA's determination of this issue is not contrary to or an unreasonable application of clearly established federal law.

### 3. Eliciting Testimony About Cutting and Distributing Cocaine Base

Petitioner next claims the prosecutor engaged in misconduct when he elicited testimony from Officer Cortez about cutting and distributing cocaine base. *See* Tr. at 58-64. Petitioner contends that because the parties had stipulated to the chemist's report that contained the weight of the cocaine and marijuana, the only relevant fact for the jury was the weight of cocaine base found. Therefore, Petitioner claims the testimony about cutting and distributing cocaine base was extraneous and prejudicial.

The record shows defense counsel objected to this testimony during trial. The trial court overruled the objection. Tr. at 60. Defense counsel objected a second time when Officer Cortez gave his opinion that Petitioner was likely selling marijuana because the police found three separate baggies with nearly a quarter pound of marijuana in each baggie. Tr. at 63. The trial court sustained the second objection. Tr. at 64.

The OCCA rejected this claim finding it to be an issue about the admissibility of evidence and that Petitioner failed to demonstrate he was prejudiced by the testimony of Officer Cortez. *See* OCCA Summary Opinion at 3. This Court agrees. The prosecution was not attempting to inflame the jury or raise societal alarm. Instead, the prosecutor was asking

16

the officer to describe the manner in which the drugs were found in the apartment and whether, in the officer's opinion, the evidence demonstrated Petitioner was intending to sell drugs to others. Moreover, given the overwhelming evidence of Petitioner's guilt, Petitioner has not shown any constitutional prejudice from the prosecutor's questioning of Officer Cortez. Again, the OCCA's determination of this issue is not contrary to or an unreasonable application of clearly established federal law.

### 4. Cumulative Effect of the Prosecutor's Conduct

Finally, Petitioner contends the cumulative effect of the prosecutor's conduct deprived him of a fundamentally fair trial. As set forth above, Petitioner has not demonstrated prosecutorial misconduct as to any of the instances about which he complains. Necessarily, therefore, Petitioner fails to show that the prosecutor's conduct, when considered cumulatively, deprived him of a fundamentally fair trial. Petitioner fails to demonstrate the OCCA's adjudication of his claims of prosecutorial misconduct are contrary to or an unreasonable application of clearly established federal law. Ground Three of the Petition should be denied.

### D. Ground Four – Excessive Sentence

In his fourth ground for relief, Petitioner claims the 30-year sentence he received on Count 1 and the 4-year sentence he received on Count 2 are excessive and grossly disproportionate to the crimes of conviction in violation of the Eighth Amendment.

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*,

538 U.S. 11, 20 (2003) (citation and internal quotations omitted). *See also Graham v. Florida*, 130 S.Ct. 2011, 2021 (2010) ("The concept of proportionality is central to the Eighth Amendment."). The proportionality principle, however, "reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003). *See also Graham*, 130 S.Ct. at 2021 (recognizing that "it has been difficult for the challenger to establish a lack of proportionality"); *United States v. Gillespie*, 452 F.3d 1183, 1190-1191 (10th Cir. 2006) (summarizing Supreme Court precedent on the proportionality principle and noting that "the [Supreme] Court has only twice invalidated a sentence under the Eighth Amendment: once in 1910, when the defendant was sentenced to fifteen years in chains and hard labor for falsifying a public document; and most recently in 1983, when the defendant was sentenced to life without parole after committing six nonviolent felonies including writing a bad $100-dollar check") (citations omitted). As the Tenth Circuit has instructed, courts "are reluctant to interfere with the legislative determination of an appropriate sentence range." *Hawkins v. Hargett*, 200 F.3d 1279, 1285 (10th Cir. 1999). Application of the narrow proportionality principle has, therefore, been reserved to the truly extraordinary case involving a sentence grossly disproportionate to the crime of conviction. *Id.*; s*ee also United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006); *United States v. Gurule*, 461 F.3d 1238, 1247 (10th Cir. 2006).

Moreover, on habeas review, the court must "afford wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or

18

unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir.2000). Indeed, habeas review generally ends "once [the court] determine[s] the sentence is within the limitation set by statute." *Id.*

As the OCCA found on direct appeal, "[t]he jury sentenced Appellant the minimum sentence for Count 2 and sentenced Appellant thirty (30) years as to Count 1. The sentence for Count 1 was well below the maximum sentence." *See* OCCA Summary Opinion at 4. In light of Supreme Court precedent on the proportionality principle and the fact that Petitioner's sentences are within the statutory range of punishment permitted under Oklahoma law, this Court concludes that Petitioner's sentences are not grossly disproportionate to his crimes. *Compare Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (holding that a sentence of life without parole is not disproportionate to a first-time offender's conviction of possession of cocaine). Petitioner fails to present the extraordinary case needed to establish a violation of his Eighth Amendment rights. The claim raised in Ground Four of the Petition, therefore, should be denied.

### E.   Ground Five – Cumulative Error

Petitioner claims that the cumulative error arising out of the claims raised in Grounds One through Four of the Petition entitles him to federal habeas relief. Petitioner raised this claim on direct appeal and the OCCA denied the claim finding "no errors that require reversal of Appellant's conviction." *See* OCCA Summary Opinion at 4.

In reviewing a claim of cumulative error, the court may only consider actual errors for purposes of determining whether a due process violation has occurred. *See Le v. Mullin*, 311

19

F.3d 1002, 1023 (10th Cir. 2002) ("[A] cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.") (*citing United States v. Rivera*, 900 F.2d 1462,1470-71 (10th Cir. 1990). *See also Workman v. Mullin*, 342 F.3d 1100,1116 -1117 (10th Cir. 2003) ("Workman's sentence cannot be unconstitutional due to cumulative error because we have not found that the district court committed error."). This Court has reviewed the claims raised in Grounds One through Four of the Petition and found no error. Therefore, Petitioner's cumulative error claim is without merit. Ground Five of the Petition should be denied.

### F.    Ground Six – Ineffective Assistance of Appellate Counsel

As his final ground for relief, Petitioner claims he received ineffective assistance of appellate counsel. Petitioner raised this claim for the first time in state post-conviction proceedings. His claims relate to the claim raised in Ground One of the Petition. Petitioner contended before the state court that trial counsel failed to effectively research sentencing disparities between crack and powder cocaine and appellate counsel failed to support his challenge to the constitutionality of Oklahoma's drug trafficking statute with statistical data.

The state district court rejected this claim on the merits finding Petitioner failed to establish ineffective assistance of counsel. *See* Response, Exhibit 4, Order Denying Application for Post-Conviction Relief [Doc. #13-4] and Respondent's Supplement to the Record [Doc. #19-1]. Petitioner then attempted to appeal the district court's denial of post-conviction relief to the OCCA. However, the OCCA declined to exercise jurisdiction and dismissed Petitioner's attempted appeal as untimely pursuant to Rule 5.2(C)(2), Rules of the

Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2009).[9] *See* Response, Exhibit 6, OCCA Order Declining Jurisdiction and Dismissing Attempted Post-Conviction Appeal. The OCCA advised Petitioner that if he could establish the untimeliness of the appeal was through no fault of his own, he could file an application for post-conviction relief seeking an appeal out of time. *See id*., footnote 2. Petitioner does not state that he ever pursued filing a request for an appeal out of time in the state district court.[10] Nor does Petitioner state any facts to demonstrate his failure to timely file an appeal was through no fault of his own.

Based on this procedural history, Respondent contends Petitioner's ineffective assistance of appellate counsel claim is procedurally barred. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the

---

[9]Rule 5.2(C) provides in pertinent part:

(2) A petition in error and supporting brief, WITH A CERTIFIED COPY OF THE ORDER ATTACHED must be filed with the Clerk of this Court. The petition in error shall state the date and in what District Court the Notice of Post-Conviction Appeal was filed. If the post-conviction appeal arises from a misdemeanor or regular felony conviction, the required documents must be filed within thirty (30) days from the date the final order of the District Court is filed with the Clerk of the District Court. . . .

* * *

(5) Failure to file a petition in error, with a brief, within the time provided, is jurisdictional and shall constitute a waiver of right to appeal and a procedural bar for this Court to consider the appeal.

[10]This Court's review of the state court docket shows Petitioner did not file such a request. *See* Case No. CF-2006-2076, District Court of Oklahoma County, State of Oklahoma, docket available at http://www.oscn.net.

prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Tenth Circuit has found that the procedural bar set forth in Rule 5.2(C) is an independent and adequate state ground sufficient to preclude federal habeas review. *See Duvall v. Reynolds*, 139 F.3d 768, 797 (10th Cir. 1998). *See also Webster v. Attorney General of the State of Oklahoma*, 213 Fed. Appx. 664, 668 (10th Cir. Jan. 12, 2007) (unpublished op.) (upholding procedural bar on ground that petitioner failed to seek timely appellate review of denial of post-conviction relief as required by OCCA Rule 5.2(C)).

Procedurally defaulted claims may nonetheless be reviewed if the petitioner can establish "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Petitioner has failed to demonstrate cause for the procedural default. In his Reply [Doc. #18] he merely reasserts his claim of ineffective assistance of appellate counsel but does not address Respondent's procedural bar defense. Nor does the Court's independent review of the record demonstrate any cause for Petitioner's procedural default of this claim.

Petitioner also has failed to demonstrate that failure to consider his claims will result in a fundamental miscarriage of justice. To show a fundamental miscarriage of justice will occur, Petitioner must demonstrate a constitutional violation "probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 322 (1995).

22

Petitioner does not raise any claim of actual innocence. Accordingly, Ground Six of the Petition should be denied on grounds of procedural default.

## VI. Request for Evidentiary Hearing and for Appointment of Counsel

In the most conclusory fashion, Petitioner requests an evidentiary hearing and the appointment of counsel. *See* Petition at 18. *See also* Petitioner's Motion for Appointment of Counsel [Doc. #17]. "Under the AEDPA, a court cannot hold an evidentiary hearing unless (1) the claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered, and (2) the facts underlying the claim are sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable jury would have found the petitioner guilty." *Bland v. Sirmons*, 459 F.3d 999, 1033 (10th Cir. 2006) (*citing* 28 U.S.C. § 2254(e)(2)). If, however, a habeas petitioner has diligently sought to develop the factual basis underlying his habeas petition but the state court has prevented him from doing so, the pre-AEDPA standard governs the determination as to whether to grant an evidentiary hearing. *Id*. Under that standard, a habeas petitioner is entitled to an evidentiary hearing if "his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir.1998).

Petitioner has failed to demonstrate that he diligently sought to develop the factual basis underlying his habeas petition but was prevented from doing so by the state courts. Even applying the more lenient pre-AEDPA standard, however, Petitioner is not entitled to an evidentiary hearing. Petitioner's asserted grounds for habeas relief do not call into

question the factual record underlying his claims. He does not allege additional facts have been discovered or otherwise demonstrate that his allegations, if true, would entitle him to habeas relief.[11] His request for an evidentiary hearing and for appointment of counsel, therefore, should be denied.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] and Petitioner's request for evidentiary hearing and Motion for Appointment of Counsel [Doc. #17] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by July ___20th___, 2010. *See* Local Civil Rule 72.1. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[11]Although Petitioner claims his appellate counsel should have developed statistical evidence to support his equal protection challenge to Okla. Stat. tit. 63, § 2-415, Petitioner makes no attempt to show what that evidence might have been. And, as set forth, Petitioner has failed to overcome the procedural default of his ineffective assistance of appellate counsel claim.

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District

Judge in this case and terminates the referral.

DATED this __29th__ day of June, 2010.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE